FILED
2012 Sep-18  AM 09:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

GERRITT H. BROUWER, JR, *et al.*,        )
                                          )
                                          )
          Plaintiffs;                     )
                                          )          7:11-cv-3959-LSC
     vs.                                  )
                                          )
WYNDHAM VACATION                          )
RESORTS, INC., et al.,                    )
                                          )
          Defendants.                     )

## MEMORANDUM OF OPINION

## I.    Introduction

Before the Court is Defendants' "Motion to Dismiss, Transfer Venue or, in the Alternative, Motion for Summary Judgment" filed on January 24, 2012. (Doc. 11.) For the reasons described below, the Motion to Dismiss is due to be GRANTED in part and DENIED in part. The Motion to Transfer venue is due to be DENIED as presently stated, but Defendants are given leave to refile in accordance with the Court's instructions in Section III.C., *infra*. The Motion in the alternative for Summary Judgment is due to be DENIED with leave to refile at the close of discovery.

## II.    Factual Background and Procedural History

Defendant Wyndham Vacation Resorts, Inc. ("WVR") is a wholly-owned subsidiary of Wyndham Vacation Ownership ("WVO"; collectively "Wyndham"), one of the world's largest timeshare companies. Wyndham develops, markets, and sells vacation ownership interests, and provides consumer financing to owners. Ownership interests are reflected by an allocation of "points" proportionate to each owner's interest. These points can then be used to make reservations at various resorts.

Plaintiffs are among Wyndham's top point holders, and belong to the highest level of a three-tiered VIP Program. They claim to have been enticed to the highest levels of ownership by Wyndham's repeated promises about the benefits that would come with additional points. Plaintiffs complain that Wyndham has altered or eliminated many of these expected benefits, including the promise of unlimited guest certificates and the ability to sell or transfer points to other owners. Additionally, Plaintiffs allege that the merger of Wyndham's point program with Resort Condominiums International, LLC ("RCI"), has diluted the value of Wyndham ownership and has made it difficult or impossible to make some reservations. Plaintiffs contend that deceptive sales practices, changes to benefits, and devaluing of ownership are all part of a "systematic scheme" directed at VIP owners like Plaintiffs. (Doc. 1 at 8.)

Plaintiffs filed a complaint in this case on November 18, 2011, against WVO, WVR, and RCI (collectively "Defendants"). (Doc. 1.) The complaint contains thirteen separate claims for relief: fraud; fraud in the inducement; suppression; breach of contract; wantonness; breach of fiduciary duty; negligence; negligent hiring, training, supervision, and retention; wanton hiring, training, supervision, and retention; unjust enrichment; a claim for an accounting; a claim for injunctive relief; and a claim for civil conspiracy to commit fraud, fraudulent inducement, and suppression. (*Id.*)

The allegations and claims for relief in Plaintiffs' complaint are virtually identical to those stated in complaints filed in three other cases currently pending before this Court: *Sirmon v. Wyndham Vacation Resorts, Inc.*, 7:10-cv-02717-LSC; *Yaeger v. Wyndham Vacation Resorts, Inc.*, 7:11-cv-3958-LSC; and *Spearman v. Wyndham Vacation Resorts, Inc.*, 7:11-cv-3960-LSC. The initial complaint in *Sirmon* was filed approximately 13 months before this action, and the complaints in *Yaeger* and *Spearman* were filed simultaneously with the one in this case. Defendants in this action are also the named defendants in each of the other three cases. The only paragraphs that differ among these complaints are the ones identifying the plaintiffs and the paragraph identifying specific representations made to the individual plaintiffs.

The *Sirmon* case has set the tone and tempo for the three cases that followed. On December 1, 2011, the defendants moved this Court to dismiss all of the claims raised in the *Sirmon* complaint. *Sirmon v. Wyndham Vacation Resorts*, *Inc.*, No. 10-2717, Docs. 62 & 64. On April 17, 2012, this Court issued an order denying dismissal as to the fraud-based claims (counts 1-3 of the complaint), granting dismissal as to the claim for injunctive relief (count 12), and deferring its ruling on the remaining counts until the *Sirmon* plaintiffs had an opportunity to file an addendum to their complaint. *Sirmon*, No. 10-2717, Doc. 100. The Court's order on the remaining counts in *Sirmon* is being issued herewith.

On January 24, 2012, while the motions to dismiss were still pending in *Sirmon*, Defendants filed the present Motion to Dismiss, Transfer Venue, or in the alternative, for Summary Judgment. (Doc. 11.) The arguments in the present motion relating to dismissal are virtually identical to the arguments raised in the pending *Sirmon* motion. Thus, the portion of this Opinion addressing Defendants' Motion to Dismiss will pattern and reference the opinion being issued in *Sirmon*. However, unlike the motions in *Sirmon*, which only contained arguments relating to dismissal, the motion in this case also includes arguments regarding venue and summary judgment. (Doc. 11.) These issues are addressed in the Court's Opinion below.

### III.    Motion to Transfer Venue

With regard to Defendants' Motion to Transfer Venue, the parameters of Defendants' argument are presently unclear and thus require further clarification. Defendants raise three separate arguments regarding venue: (1) venue should rest in Florida pursuant to an agreed upon forum selection clause, (2) venue should be transferred to Missouri pursuant to the doctrine of *forum non conveniens*, and (3) venue is inappropriate in Alabama under 28 U.S.C. § 1391. For the reasons described below, the Court rejects Defendants' first two arguments. Defendants' third argument is rejected as presently stated; however, the Court invites Defendants, if they so choose, to renew their motion in accordance with the Court's instructions in Section C below.

### A.    Forum Selection Clause

Defendants argue that venue in the Northern District of Alabama is inappropriate because a choice-of-forum clause in the FairShare Vacation Plan Use Management Trust Agreement ("Trust Agreement") mandates a Florida forum. The referenced clause, entitled "**Construction of Trust Agreement**," provides in pertinent part:

> Any action brought to enforce the terms or interpret any provision of this Trust Agreement or any other action in any manner relating to the Trust, the Trustee, the Trust Properties or the Plan shall be brought in the State Courts in Orange County, Florida or the Federal District Courts for the Middle District of Florida.

(Doc. 13-1, § 14.01.)

As an initial matter, for the same reasons stated in the opinion being simultaneously issued in *Sirmon*, *see Sirmon*, No. 10-2717, Doc. 149, the Court does not agree that the FairShare Vacation Plan Use Management Trust (the "Trust") is an indispensable party to this litigation. Indeed, the Court finds no reason why complete relief cannot be accorded among the current parties to the lawsuit without the inclusion of the Trust. The Trust Agreement, therefore, is arguably wholly irrelevant to this dispute. Nonetheless, even if the Trust Agreement is applicable, the forum selection clause is drafted in a manner that excludes the conduct comprising the crux of Plaintiffs' complaint.

The forum selection clause is included within a paragraph captioned "Construction of Trust Agreement" and appears to be directly targeting disputes about the interpretation or enforcement of the Trust Agreement. This dispute, in contrast, is about the allegedly fraudulent and deceptive sales tactics employed by Defendants to entice Plaintiffs into higher levels of ownership. While Plaintiffs' complaint mentions the Trust Agreement, the heart of this dispute relates to fraudulent oral representations that have nothing to do with the "Construction" of the Trust Agreement.

Defendants assert a broader interpretation of the forum selection clause than the one accepted by this Court. Specifically, Defendants contend that this action falls within the catchall provision of the forum selection clause which reaches "any other action in any manner relating to the Trust." This language, however, does not appear to include claims for fraudulent misrepresentation and suppression, particularly since the heading of the paragraph limits the scope to "Construction of [the] Trust Agreement." If the forum selection clause was intended to have a broader application, that intention should have been clearly stated. Furthermore, Alabama law directs that any ambiguity is to be construed against the drafter. See *Southtrust Bank v. Copeland One, L.L.C.*, 886 So. 2d 38, 43 (Ala. 2003) ("It is a well-established rule of contract construction that any ambiguity in a contract must be construed against the drafter of the contract."). Accordingly, Defendants request that the Court transfer this action to Florida is due to be denied.

### B. *Forum Non Conveniens*

Defendants next argue this matter should be transferred to Missouri pursuant to the doctrine of *forum non conveniens*. In considering a motion for dismissal on grounds of *forum non conveniens*, the Court must "consider all relevant factors of private interest, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice." *SME Racks, Inc. v. Sistemas Mecanicos Para*

*Electronica, S.A.*, 382 F.3d 1097, 1100 (11th Cir. 2004). Then, the Court must "determine whether or not factors of public interest tip the balance in favor of a trial in a foreign forum." *Id.* Importantly, "*unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.*" *Id.* at 1100–01 (quoting *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 508 (1947)) (emphasis in original).

Among the private interest factors a court considers in the *forum non conveniens* analysis are: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of the premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *SME Racks*, 382 F.3d at 1100 (quoting *Gilbert*, 330 U.S. at 508–09). The Court is not convinced that any of these factors suggest Missouri is a more convenient forum. Defendants have not established that access to sources of proof or witnesses would be enhanced by adjudication in Missouri. In contrast, Plaintiffs assert, and Defendants did not contest, that "the majority of the witnesses are located in Florida, which is far closer to Alabama than Missouri." (Doc. 24 at 13.) Other than the fact that Missouri is Plaintiffs' place of residence, there does not

appear to be anything that would lead this Court to conclude that Missouri is more convenient than the Northern District of Alabama.

The Court likewise disagrees that public interest factors dictate that this case should be transferred to Missouri. Although there is perhaps a localized interest in having a case involving Missouri plaintiffs tried before a jury of Missouri citizens, this fact, standing alone, is not enough to require transfer of this litigation. *Forum non conveniens* is a discretionary doctrine that should only be applied to disturb the plaintiffs' chosen forum when the balance of public and private factors is "strongly in favor of the defendant." *Gilbert*, 330 U.S. at 508. Indeed, the Eleventh Circuit has held there is a "strong presumption against disturbing plaintiffs' initial forum choice." *SME Racks*, 382 F.3d at 1100. Defendants have not demonstrated that these factors weigh so strongly in their favor that Plaintiffs' choice is due to be overturned. Accordingly, the Motion to Transfer Venue on *forum non conveniens* grounds is due to be denied.

### C.    28 U.S.C. § 1391

Defendants' final argument is that the Northern District of Alabama is an inappropriate venue because 28 U.S.C. § 1391(b) dictates venue should lie in Missouri. Section 1391(b) provides:

(b) **Venue in general.**—A civil action may be brought in—

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Beginning with § 1391(b)(1), Defendants argue that venue is inappropriate in Alabama under this provision because the statute's requirement that all defendants reside in the forum is not satisfied. Specifically, Defendants point out that WVO is not a resident because it is not subject to personal jurisdiction in Alabama. A corporation, for venue purposes, only resides in a judicial district where it is subject to personal jurisdiction. 28 U.S.C. § 1391(c). Therefore, Defendants argue, venue would be improper under § 1391(b)(1).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  Because the due process guarantees of the Alabama Constitution are coextensive with that of the

Constitution of the United States, this Court turns to the question whether the requirements for personal jurisdiction under the Due Process Clause of the Fourteenth Amendment have been satisfied. *See Ex parte Georgia Farm Bur. Mut. Auto. Ins. Co.*, 889 So. 2d 545, 550 (Ala. 2004).

"Considerations of due process require that a non-resident defendant have certain minimum contacts with the forum, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The sufficiency of the defendant's contacts with the forum state depends on the quantity and quality of those contacts, as well as the type of personal jurisdiction being asserted: specific or general. *Id.* In their response to this motion, "[t]he Plaintiffs concede[d] that specific jurisdiction does not exist in this case." (Doc. 24 at 12.) Therefore, the Court must determine whether WVO has sufficient contacts with Alabama to give rise to general personal jurisdiction.

"The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1274 (11th Cir. 2002)

(citations omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___U.S.___, 131 S. Ct. 2846, 2853–54 (2011).

The Supreme Court's decisions regarding general personal jurisdiction set forth a bar that is difficult to reach. Despite considering general jurisdiction on a few occasions, *see, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984); *Goodyear*, 131 S. Ct. 2846, the Supreme Court has only recognized general jurisdiction over a corporate entity in one circumstance. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952). In *Perkins*, a Philippine company temporarily moved its corporate headquarters to Ohio during World War II. The Court noted a variety of contacts with Ohio, including holding directors' meetings and keeping company files in the state, distributing salary from Ohio bank accounts, and supervising overseas projects from Ohio. *Id.* at 445.  As the only case where general jurisdiction has been recognized, *Perkins* "remains '[t]he textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum.'" *Goodyear*, 131 S. Ct. at 2856 (quoting *Donahue v. Far Eastern Air Transport Corp.*, 652 F.2d 1032, 1037 (C.A.D.C. 1981). Accordingly, *Perkins* in many ways is the benchmark for attaining general jurisdiction over a corporation that neither has its

principal place of business nor is incorporated within the chosen forum state. *Goodyear*, 131 S. Ct. at 2857 (measuring the defendant's contacts against those found in *Perkins* and finding the defendants were not "at home" in the forum where suit was filed).

The Court agrees with Defendants that WVO is not subject to general personal jurisdiction within the state of Alabama in this matter. WVO does not have the type of "continuous and systematic" contacts with the state that the Supreme Court and the Eleventh Circuit have deemed necessary to subject a party to general personal jurisdiction. WVO is incorporated in Delaware and has its principal place of business in Florida. Although Plaintiffs have shown that other defendants, namely WVR, are authorized to transact business in Alabama, it has not made such a showing with respect to WVO. Indeed, WVO is not so authorized. *Cf. Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779–780 n.11 (1984) (Ohio's exercise of general jurisdiction was permissible in *Perkins* because "Ohio was the corporation's principal, if temporary, place of business"). It is Plaintiffs that "bear[] the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Mazer*, 556 F.3d 1274. Plaintiffs failed to allege sufficient facts establishing that WVO should be fairly deemed "at home" within the state of Alabama and thus they have not carried

this burden. *Goodyear*, 131 S. Ct. at 2854. Therefore it would be unwarranted for this Court to subject WVO to the personal jurisdiction of the Court.

Finding personal jurisdiction is lacking as to WVO, this Court turns to the resulting impact on this litigation. If Defendants are seeking to have WVO dismissed from this lawsuit, the appropriate motion would no doubt have been a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The Court, however, is uncertain whether Defendants intended to seek relief in this manner. Defendants' motion asks the Court to dismiss this action "pursuant to Rules 9(b), **12(b)(3)** [improper venue], 12(b)(6), 12(b)(7), 19, and 56 of the Federal Rules of Civil Procedure." (Doc. 11 at 1, emphasis added.) Defendants never expressly reference Rule 12(b)(2).

Notwithstanding the fact that Defendants did not explicitly mention Rule 12(b)(2), Defendants' brief presents detailed arguments that WVO is not subject to personal jurisdiction. Structurally, however, those arguments are located in the section of the brief attacking venue in Alabama, which is framed as a motion under Rule 12(b)(3). Because Defendants' arguments regarding personal jurisdiction appear to be raised in a motion under Rule 12(b)(3), and not Rule 12(b)(2), the Court assumes that WVO is waiving the lack of personal jurisdiction so that it can participate in this action.

Therefore, as presently stated, Defendants' motion with respect to venue under 28 U.S.C. § 1391 is due to be denied. If the Court has misinterpreted WVO's pleading, WVO should file a renewed motion within ten (10) days from the date of this Opinion asserting its desire to be dismissed pursuant to Rule 12(b)(2). If, however, Defendants are only challenging venue and wish to continue to do so, Defendants are instructed to file within ten (10) days a motion renewing the motion to challenge venue.  Defendants should file a brief in support of said motion to transfer venue, not to exceed ten (10) pages, and the brief should address the ramifications of WVO waiving personal jurisdiction as it affects the application of 28 U.S.C. § 1391. Plaintiffs will then have ten (10) days from the filing of Defendants' motion and brief to submit a response of not more than ten (10) pages. The Court will then take the motion under submission without further notice to the parties.

## IV.   Motion to Dismiss

The Court will now turn to Defendants' Motion to Dismiss with the recognition that the impact of the Court's ruling on this motion may be subsequently altered depending on Defendants' response to the Court's invitation in Section III.C., *supra*.

### A.   Legal Standard

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be

granted. "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In addition, all "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).[1] The plaintiff must plead "enough facts to state a claim that is plausible on its face." *Id.* at 570. Unless a plaintiff has "nudged [his] claims

---

[1]In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *Bell Atl. Corp.*, 550 U.S. at 560-63. The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563.

across the line from conceivable to plausible," the complaint "must be dismissed."
*Id.*

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, the U.S. Supreme Court suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 664). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 682).

**B.    Discussion**

There is a great deal of homogeneity between this case and *Sirmon v. Wyndham Vacation Resorts, Inc.*, No. 10-2717, which is also pending before this Court. Indeed, hundreds of pages of the briefs filed by both parties in this action have been replicated word for word from briefs and other documents previously filed in *Sirmon*. Going to great lengths to reproduce the exact same analysis already expressed elsewhere is not in the best interest of judicial economy. Given the similarity between these two actions, the portion of this Opinion relating to Defendants' Motion to Dismiss parallels the equivalent opinion being simultaneously entered in *Sirmon*. *See Sirmon*, No. 10-2717, Doc. 149. This Opinion will express the ultimate decision without repeating the underlying reasoning.

Therefore, for the same reasons expressed in this Court's Order of April 17, 2012, in *Sirmon*, Defendants' Motion to Dismiss is due to be DENIED as to Plaintiffs' fraud based claims (Counts 1-3 of the complaint), and due to be GRANTED as to Plaintiffs' claim for injunctive relief (Count 12). *See Sirmon*, No. 10-2717, Doc. 100. Likewise, for the reasons expressed in the *Sirmon* opinion being issued herewith, Defendants' Motion to Dismiss is due to be DENIED as to the remaining counts of Plaintiffs' complaint. *See Sirmon*, No. 10-2717, Doc. 149.

The Court acknowledges the omission of a procedural step in this action which it required in *Sirmon*. In both *Sirmon* and the present action, Defendants' motions to

dismiss argue that the respective complaints utilized impermissible "shotgun" style pleading. In *Sirmon*, this Court remedied this problem by requiring the plaintiffs to file an addendum to their complaint "identifying which specific factual paragraphs [were] being offered in support of which specific claims." *Sirmon*, No. 10-2717, Doc. 100 at 14. It was only after that addendum was filed that this Court concluded Defendants' motions to dismiss were due to be denied. *See Sirmon*, No. 10-2717, Doc. 149. The Court finds no need to repeat this procedural step in the instant action. The only differences between the *Sirmon* complaint and the complaint in this case are the parties listed in the initial paragraphs. Given this similarity, it will be relatively easy for Defendants to use the addendum to the complaint in *Sirmon* to clarify any questions raised by the blanket incorporations used in the pleadings in this case. *See Sirmon*, No. 10-2717, Doc. 110.

## V.     Motion for Summary Judgment

Defendants asked this Court to convert their motion into a motion for summary judgment to the extent any claims challenged in the Motion to Dismiss are otherwise not disposed of by the Court. Plaintiffs responded by attaching to their responsive brief an affidavit filed pursuant to Federal Rule of Civil Procedure 56(d), arguing that summary judgment is inappropriate without further discovery. (Percy Badham Aff., Doc. 24-24.)

Rule 56(d) of the Federal Rules of Civil Procedure provides a mechanism for relief where a party faced with a summary judgment motion does not have the facts necessary to respond to it. The rule provides:

> **(d) When Facts Are Unavailable to the Nonmovant**
> If a nonmovant shows by affdavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). In the present case, Plaintiffs seek further discovery regarding (1) the creation, purpose, and success of Extra Holidays, a division of Wyndham dedicated to helping owners rent their points; (2) the creation, purpose, features, and implementation of Voyager, the new reservation system which may play a part in inventory allotment and cancellations, and (3) the inventory allotment criteria and priority. (Doc. 24 at 52.)

Plaintiffs have sufficiently established that, as of the date Defendants' motion was filed, further discovery was needed to develop the issues related to this matter. The Court acknowledges that substantial discovery has occurred since the filing of Defendants' motion,  and it fully anticipates that Defendants will soon file an actual motion for summary judgment. Nevertheless, at this time, Defendants' Motion for Summary Judgment is premature, and thus due to be DENIED with leave to refile at the conclusion of discovery.

## VI.    Conclusion

For the reasons previously stated, the Motion to Dismiss is due to be GRANTED in part and DENIED in part and the alternative Motion for Summary Judgment is due to be DENIED with leave to refile at the close of discovery. Defendants' Motion to Transfer Venue is due to be DENIED as presently stated, but Defendants are invited to submit a newly filed motion in accordance with the instructions in Section III.C above. A separate order will be entered consistent with this Opinion.

Done this 18th day of September 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[170956]